STATE OF NEBRASKA EX REL. EUGENE F. FITZGERALD, COUNTY ATTORNEY OF DOUGLAS COUNTY, NEBRASKA, APPELLEE, v. LEO KUBIK ET AL., APPELLANTS.

92 N. W. 2d 533

Filed October 24, 1958. No. 34384.

*Schrempp & Lathrop,* for appellants.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an action brought to enjoin the operation of an establishment known as the Carter Lake Country Club on the grounds that it was being operated as a common nuisance. The action was brought in the district court for Douglas County on October 14, 1957, in the name of the State of Nebraska on the relation of Eugene F. Fitzgerald, County Attorney for Douglas County. The trial court found that the Carter Lake Country Club was being operated by the defendant Leo Kubik as a commercial enterprise and in such a manner as to be in violation of the provisions of the Nebraska Liquor Control Act and, therefore, a common nuisance within the meaning thereof. It ordered that the operation of the club be permanently enjoined. The named defendants Carter Lake Country Club, Leo Kubik, and Regina Kubik thereupon filed a motion for new trial, which was overruled. This appeal was taken therefrom by the defendants Leo Kubik and Regina Kubik, who are husband and wife. In view of the nature of the action it will be reviewed in this court de novo. § 25-1925, R. R. S. 1943.

The evidence establishes that on October 14, 1957, when this action was instituted, Leo Kubik and Regina Kubik were the record title owners of that part of Lot Four (4), East Omaha Land Company's Land, lying south of Locust Street and northwest of Abbott Drive, Douglas County, Nebraska, which property appellant Leo Kubik, whom we shall herein refer to as Kubik,

had owned for more than 10 years prior thereto; that the property is commonly described as 1515 East Locust Street, East Omaha, Douglas County, Nebraska, but is entirely outside of any incorporated city or village; that Kubik caused substantial improvements to be built on this land; and that in either May or June of 1957 Kubik began to use these improvements by operating a business therein under the name of the Carter Lake Country Club. Although Kubik testified he went through certain procedures to organize Carter Lake Country Club as a private club, apparently to bring it within the meaning of subdivision (19) of section 53-103, R. R. S. 1943, the evidence establishes that he actually operated the Carter Lake Country Club as a private business.

Although the club would be opened somewhat earlier, most of its business was conducted after 1 o'clock a.m. It would remain open thereafter as long as any customers remained, which had been as late as 6 o'clock a.m. prior to October 15, 1957, on which date it was closed by the law enforcement officers of Douglas County. The principal business of the club consisted of furnishing and serving set-ups for intoxicating liquors, although incident thereto it did serve some food to some of its patrons. The evidence shows the principal business of the club was operated in the following manner: If an adult person, who appeared to be respectable, came to the club with a bottle of intoxicating liquor (apparently a fifth) he could gain admission thereto but before entering the bar, or main room of the club through the second set of doors, he had to exchange his bottle of liquor for a card; this card, on which his name and the kind or brand of liquor which he had furnished was written, had numbers from 1 through 25 printed along the outer edges thereof and entitled the person whose name was written thereon to buy 25 drinks in the bar room of the club at 50 cents each of the kind and brand of liquor he had furnished, one number

being punched for each drink served; and while the name of the person who furnished the liquor would be written on the bottle he had furnished to the management of the club, however, in serving that person and his guest no attempt was made to supply liquor solely from his bottle, but it was served from any bottle of liquor of the same kind and brand, the management furnishing the mix and ice, or either, for that purpose. It thus becomes evident that through the medium of furnishing a bottle of intoxicating liquor and the payment of $12.50 (50 cents for each drink when served) any person patronizing the club could buy 25 drinks of intoxicating liquor of the kind and brand he had furnished.

There is no evidence of the club having been run in a disorderly or improper manner and therefore a possible nuisance at common law. See State ex rel. Johnson v. Hash, 144 Neb. 495, 13 N. W. 2d 716. So the question arises as to whether or not it is a common nuisance within the meaning of the Nebraska Liquor Control Act. Section 53-198, R. R. S. 1943 (formerly § 53-376, C. S. Supp., 1941), which is a part of that act, provides, insofar as here material, as follows: "Any * * * building * * * structure or place of any kind where alcoholic liquors are sold, * * * bartered or given away, in violation of this act, or where persons are permitted to resort for the purpose of drinking same, in violation of this act, or any place where such liquors are kept for sale, barter or gift, in violation of this act, and all such liquors, and all property kept in and used in maintaining such a place, are each and all of them hereby declared to be a common nuisance; and any person who maintains or assists in maintaining such common nuisance shall be guilty of a violation of this act." Section 53-199, R. R. S. 1943 (formerly § 53-377, C. S. Supp., 1941), sets out the authority of the courts to deal therewith if such nuisance exists and provides, insofar as here material, as follows: "* * * county attorney in the

county where such nuisance exists, or is kept or maintained, may maintain an action by injunction, in the name of the State of Nebraska, to abate and temporarily or permanently to enjoin such nuisance. The court shall have the right to make temporary and final orders as in other injunction proceedings. The plaintiff shall not be required to give bond in such action, and, upon final judgment against the defendant, such court shall also order that such room, house, building, structure, boat or place of any kind shall be closed and padlocked for a period of not less than three months nor more than two years * * *."

It is true, as appellants point out, that nothing in the Nebraska Liquor Control Act "shall prevent the possession and transportation of alcoholic liquor for the personal use of possessor, his family and guests; * * *." § 53-102, R. R. S. 1943. However, as we said in State ex rel. Johnson v. Hash, *supra:* "Liquor cannot be lawfully sold by the drink outside the corporate limits of cities and villages under any circumstances. In other words, insofar as selling and dispensing liquor by the drink is concerned, the country outside the boundaries of incorporated cities and villages is dry territory. This does not mean that persons may not congregate in such territory for the purpose of imbibing intoxicating liquors. It merely means that business places engaged in selling and dispensing liquors by the drink are not permitted in such areas under the terms of the act."

The opinion further states: "The act clearly indicates a legislative policy that places which permit sales by the drink and its consequent group drinking in the territory outside the corporate limits of cities and villages are contrary to the public health, morals and welfare of the people of this state."

We think the following from State ex rel. Johnson v. Hash, *supra,* has direct application to the factual situation here presented and controlling thereof: "It is clear that defendants were operating a place of business for

profit, which brought upon the community all the evils of public group drinking in rural areas, contrary to the provisions of the Nebraska Liquor Control Act. Defendants cannot escape responsibility for their contribution to the evils decried by the legislature by merely showing that liquor was not sold by them. By the simple expedient of having their patrons bring their own liquor, the defendants furnishing every other facility for the promulgation of the evils proscribed by the legislature, the defendants must be deemed to have created and maintained a public nuisance in direct contravention to the declared purposes of the act.

"We think the maintaining of a place where liquor is habitually brought by others to be there consumed, with the encouragement of the owner who profits from the sale of 'set-ups,' with all the evil results of public group drinking present, constitutes a public nuisance when such place is operated in territory in which sales by the drink are prohibited * * *."

As we said in State ex rel. Johnson v. Hash, *supra:* "But where, as here, the main business of the defendants contravenes the law of the state and the legitimate business of the place is either a sham or a minor part of the whole, the only adequate remedy consists of an abatement of the nuisance by closing the place by injunctive process in the manner prescribed by the legislature."

Having come to the conclusion, based on the facts as we have determined them to be, that the trial court was correct in what it did, we affirm its action taken herein.

AFFIRMED.